1 | **LAW OFFICES OF F. EDIE MERMELSTEIN**
F. Edie Mermelstein, State Bar No. 248941
2 | 17011 Beach Blvd., Suite 900
Huntington Beach, CA 92647
3 | Telephone: (714) 596-0137 Fax: (714) 842-1979

4 | Attorneys for Plaintiff ANTONIA
BASILOTTA p/k/a TONI BASIL, an
5 | individual

6

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | ANTONIA BASILOTTA, p/k/a TONI BASIL an individual,

CASE NO. **CV 12 - 05186 DDP (SHx)**

11 | Plaintiff,

**COMPLAINT**

12 | vs.

JURY TRIAL DEMANDED

13 | Simon Peter Lait, an individual; Clive Solomon, an individual; Stillwater, Ltd., a
14 | United Kingdom company; Razor & Tie Direct L.L.C., a New York Limited
15 | Liability Company; Razor & Tie Entertainment, L.L.C., a New York
16 | Limited Liability Company; and Razor & Tie Music Corp., a New York Corporation
17 | and DOES 1-10,

18 | Defendants.

(1) Fraud or Deceit; (2) Misappropriation of Likeness in Violation of California Civil Code §3344; (3) Misappropriation of Name and Likeness in Violation of Common Law; (4) Unjust Enrichment; (5) Involuntary Trust; (6) Rescission based on Fraud and/or Lack of Consideration; (7) Violation of Business & Professions Code § 17200, et seq; (8) Breach of Contract; (9) Accounting; and (10) Declaratory Relief.

19

20

21

22 | **COMPLAINT**

23 | Plaintiff, ANTONIA CHRISTINA BASILOTTA (p/k/a "Toni Basil"), brings this

24 | complaint and alleges as follows:

25

26

27

28

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

*NATURE OF THE ACTION AND RELIEF SOUGHT*

1.      Plaintiff, TONI BASIL, files this action seeking an order from the Court to quiet title and provide declaratory relief of ownership rights for the following U.S. Copyrighted Master Recordings:

(A)    MASTER RECORDING entitled "Word of mouth / [performed by] Toni Basil" US Copyright Registration No. SR0000038729;

(B)    MASTER RECORDING entitled "Mickey / N. Chinn, M. Chapman ; [performed by] Toni Basil. Thief on the loose / T. Basil, G. Mathieson ; [performed by] Toni Basil" US Copyright Registration No. SR0000041440;

(C)    MASTER RECORDING entitled "Mickey : Spanish version / N. Chinn, M. Chapman ; [performed by] Toni Basil. Thief on the loose / T. Basil, G. Mathieson ; [performed by] Toni Basil." US Copyright Registration No. SR0000041439;

(D)    MASTER RECORDING entitled "Mickey : special club mix / N. Chinn, M. Chapman ; [performed by] Toni Basil. Mickey : Spanish version / N. Chinn, M. Chapman ; [performed by] Toni Basil" US Copyright Registration No. SR0000041392

*(Collectively the "Toni Basil Masters")*

2.      The Toni Basil Masters include Plaintiff's iconic, famous and world-renowned, Eighties cheerleading anthem, "Hey Mickey" (hereinafter "*Mickey*").  *Mickey* is the highly marketed, commercially successful master recording, which has derived a significant amount of income for Defendants, in which Plaintiff was and is entitled;

3.      Plaintiff alleges that Simon Peter Lait, through a series of fraudulent transfers, commandeered Plaintiff's ownership of *Mickey*, while all Defendants have

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

1 engaged in a continuing campaign to exploit and use Plaintiff's name, voice, photograph

2 and likeness without any legal right to do so;

3     4.     Plaintiff seeks temporary and permanent injunctive relief, damages

4 (including actual and punitive damages, costs, and fees and expenses of attorneys and

5 other professionals), breach of contract, copyright infringement, rescission of contract, and

6 other appropriate relief, arising out of, among other things, Defendants' willful actions and

7 in conscious disregard of Toni Basil's rights;

8                                     ***PARTIES***

9     5.     Plaintiff, Toni Basil, is a resident of the State of California, County of Los

10 Angeles.  Ms. Basil is a recording artist and choreographer credited with her most famous

11 work, *Mickey*, which has been exploited and unlawfully licensed throughout the world

12 over the last three decades;

13     6.     Defendant, Simon Peter Lait ("Lait") is a citizen of the United Kingdom

14 ("UK").  Lait was the principal of Radialchoice Limited ("Radialchoice"), the now defunct

15 UK independent record label, which was involuntarily dissolved on or about June 14,

16 1988, and also the principal in the UK registered defunct company Ultratape Limited,

17 which later changed its name to Alarum Limited ("Ultratape/Alarum"), which was also

18 involuntarily dissolved on or about September 8, 1998.  Lait's last known address is Pilton

19 Road, The Old Rectory, Glebe Court, Wadenhoe, Northhampshire PE8 5SY, United

20 Kingdom;

21     7.     Defendant, Stillwater Limited ("Stillwater"), whose principal is Clive

22 Solomon ("Solomon"), is a UK registered company that purports to have obtained legal

23 title to the Toni Basil Masters, including *Mickey* by way of transfers and assignments,

24 without ever obtaining the required written permission from Toni Basil.  Stillwater's last

25 known address is 21a Maury Road, Hackney, London N16, 7BP, United Kingdom;

26     8.     Defendants, Razor & Tie Direct L.L.C. (a New York Domestic Limited

27 Liability Company), Razor & Tie Entertainment, L.L.C. (a New York Domestic Limited

28 Liability Company) and Razor & Tie Music Corporation, (a New York Domestic Business

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

1  Corporation) (collectively "R&T") purport to be the United States and Canadian licensee

2  of the Toni Basil Masters and have actively marketed Mickey commercially without

3  obtaining the permission of Toni Basil.  R&T's last known address is 214 Sullivan Street,

4  #4A, New York, New York 10012;

5       9.     Plaintiff, Toni Basil is ignorant of the true names and capacities of

6  defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these

7  defendants by such fictitious names. Plaintiff will amend this complaint to allege their true

8  names and capacities when ascertained.

9

10                        *JURISDICTION AND VENUE*

11      10.    This Court has subject-matter jurisdiction over this action pursuant to 28

12  U.S.C. § 1332(a)(1), in that complete diversity of citizenship exists between Ms. Basil and

13  Defendants and the amount in controversy exceeds $75,000, exclusive of interest and

14  costs;

15      11.    This Court also has subject-matter jurisdiction over this action pursuant to 28

16  U.S.C. § 1331, and such jurisdiction is exclusive of state courts pursuant to 28 U.S.C. §

17  1338, in that this action arises under the U.S. Copyright Act of 1976, as amended, 17

18  U.S.C. § 101 et seq, more specifically dealing with 17 U.S.C.A. § 204(a);

19      12.    This Court has jurisdiction as this case arises under the United States

20  Constitution and the laws of the United States and presents a federal question within this

21  Court's jurisdiction under Article III of the United States Constitution and 28 U.S.C. §

22  1331 as such, this Court has authority to grant declaratory relief pursuant to the

23  Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.

24      13.    This Court has pendent jurisdiction over the state-law claims in this action in

25  that the federal and state claims constitute a single case and the same evidence will prove

26  both sets of claims;

27      14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), in that a

28  substantial part of the events giving rise to the claims occurred within the Central District

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

of California, including the execution of the contract at issue, as well as marketing, advertising, promotion, offering for sale, and sale of *Mickey*. Plaintiff is a California resident and hereby asserts herself as the rightful copyright holder of the Toni Basil Masters, which are the subject of this complaint;

### *THE RECORDING AGREEMENTS*

### The 1979/80 Recording Contract ("Controlling Agreement")

15.     On or about August 31, 1979, Toni Basil entered into a recording contract with Radialchoice, Ltd. ("Radialchoice"). This record contract covers Basil's first album, entitled "Word of Mouth" which includes Toni Basil's iconic song, *Mickey*. Attached hereto as Exhibit 1 is the Controlling Agreement;

16.     Toni Basil first album, "Word of Mouth" album produced the following tracks: (1) Mickey; (2) Rock On; (3) Shopping A to Z; (4) You Got A Problem; (5) Be Stiff; (6) Nobody; (7) Little Red Book; (8) Space Girls; (9) Thief On the Loose; (10) Time After Time; (11) Hanging Around;

17.     The Controlling Agreement grants Radialchoice ownership of the above master recordings ("Masters") and the world-wide copyright rights for Basil's first album and sets forth the royalty and accounting schedule payable and accountable to Basil;

18.     The Controlling Agreement states in paragraph 11(b), "[Radialchoice] may assign this Agreement together with its rights and obligations to such third party as it may elect with [Basil's] consent in writing PROVIDED THAT [Radialchoice] may so assign without consent to any company owned or controlled by Simon Lait or in which the said Simon Lait holds or shall hold a majority shareholding interest[.]"

19.     Paragraph 15 of the Controlling Agreement states, "[t]his Agreement and any and all extensions and/or modifications thereof shall be governed by the laws of England." The Controlling Agreement is silent as to choice of venue;

20.     The Controlling Agreement further states in Paragraph 18(c), "[i]n no event will [Radialchoice], its licensees or assigns produce a video tape or disc featuring the masters or any of them without the prior approval of [Basil], which approval will not be

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

1  unreasonably withheld."

2  21.  On or about October 1, 1980, a letter agreement amending certain terms of

3  the Controlling Agreement was signed by Radialchoice and Basil.  The amendment dealt

4  with the release of Basil's first album and conferred ownership of the copyright in and to

5  the videotape album containing the hit single *Mickey* equally to Basil and Radialchoice.

6  Attached hereto as Exhibit 2 is the Amendment to the Controlling Agreement.

7  <u>**The 1982 Recording Contract ("Second Album Agreement")**</u>

8  22.  On or about August 8, 1982, Toni Basil entered into a second recording

9  contract with Radialchoice for a follow up album.  This record contract covers Basil's

10 second album, entitled "Toni Basil."

11 23.  The second album entitled "Toni Basil" produced the following tracks: (1)

12 Over My Head; (2) Do You Wanna Dance; (3) Go for the Burn; (4) Street Beat; (5)

13 Suspense; (6) Spacewalkin' the Dog; (7) Best Performance; (8)  Easy for You to Say; and

14 (9) I Don't Hear You;

15 24.  The Second Album Agreement is not an amendment to the Controlling

16 Agreement, but a separate and distinct agreement for the recording of Plaintiff's second

17 self titled album and in does not in anyway control the rights to *Mickey*.  The Second

18 Album Agreement only controls the second album.

19 25.  Under the Second Album Agreement, Clause 18.1 states, "[t]he Artiste

20 expressly agrees that the Company may at any time transfer and assign this Agreement,

21 and – or license all or any part of the Company's rights hereunder, to any solvent and

22 financially responsible person, firm or corporation which is a subsidiary of affiliate of

23 Company or which has common ownership with Company or to any person, firm or

24 corporation which shall acquire all or substantially all of Company's assets, or to any other

25 third party approved by Artiste, such approval not to be unreasonably unheld, and this

26 Agreement shall inure to the benefit of the Company's permitted successors, licensees and

27 assigns."

28

---

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

26.     Provision 18.2(a) of the Second Album Agreement states, "[t]his agreement shall *automatically* terminate in the event of the Company going into liquidation (other than a voluntary liquidation for the purpose of reconstruction or amalgamation which in no way diminishes the rights, entitlements or privileges of Artiste hereunder) whereupon each and all rights vested in the Company hereunder shall *automatically and without necessity of any action of any kind irrevocably and totally revert to Artiste.*"  [Emphasis added]

### *CHAIN OF TITLE TO MICKEY*

27.     Toni Basil entered into the Controlling Agreement with Radialchoice on or about August 31, 1979, which resulted in the creation of *Mickey*.  Toni Basil was not a "work for hire" during this period and the Controlling Agreement does not contain a "work for hire" clause.  Toni Basil conceptualized, storyboarded, and composed the famous opening chant – "*Hey Mickey you're so fine, you're so fine you blow my mind, Hey Mickey.*"  Toni Basil altered an existing song written by Nicky Chinn and Michael Chapman entitled  "*Kitty*," adding the cheerleading chant she composed and then changed "*Kitt*y" to "*Mickey*."  In addition, Toni Basil choreographed, produced, directed and creatively edited the music video and performed the song Mickey.

28.     In the early 1980's a lawsuit was instigated in the United Kingdom by "Word of Mouth" music producer Greg Mathieson ("Mathieson"), who was owed money by Radialchoice Ltd. for services in connection with the production of *Mickey*.  Mathieson was awarded a judgment against Radialchoice Ltd. and began collection efforts.  In an effort to abscond with all of the recording proceeds, and avoid payment to Mathieson, Radialchoice's principal, Lait, carried out a plan to fraudulently convey the Toni Basil Masters to avoid payment of the judgment.

29.     On or about December 5, 1983, Radialchoice Ltd., attempted to transfer title to *Mickey* (and other assets) to Ultratape Limited, a United Kingdom Company (Registered Number 1773227) that later changed its name to Alarum Limited (same company number). This attempted transfer of ownership to the copyright in Mickey was in effective because

the transfer document did not list the Controlling Agreement in the schedule of Artiste Agreements, which was necessary to confer ownership of the copyright.  In addition, Radialchoice did not obtain the written consent of Toni Basil for this transfer.

30.  Provision 11.2 of the Radialchoice to Ultratape/Alarum transfer expressly states, "[t]his Agreement is personal to the parties hereto and **may not be assigned** but shall bind the successors of each of the parties hereto." [Emphasis Added.]

31.  On or about September 5, 1985, pending another forced liquidation of another company where Lait was at the helm, Ultratape/Alarum attempted to transfer *Mickey* to himself.  Again, the transfer document failed to list the Controlling Agreement and Basil's written consent to the transfer was not obtained.  Additionally assignment is expressly prohibited as per the express term in the Radialchoice to Ultratape/Alarum transfer document noted in Paragrah 28 above, therefore this assignment was fraudulent and ineffective.

32.  On or about March 31, 1987 Ultratape/Alarum failed to pay debts and royalties due and was involuntarily dissolved.  On or about June 14, 1988, Radialchoice was wound up compulsorily and also officially involuntarily dissolved.  Lait concealed these facts from Plaintiff who was unaware of the forced dissolution of the two entities.  Additionally, the U.S. Copyright Office was never notified of any change in ownership.

33.  On or about December 19, 1989, Lait entered into an agreement with an individual, Roy Clifford Tucker ("Tucker") to transfer *Mickey* and the Toni Basil Masters.  Although at this point in time, Plaintiff alleges *Mickey* had never legally transferred and remained in one of the bankrupt entities (Radialchoice or Ultratape/Alarum) and should have reverted back to her. The involuntary dissolutions were not made known to Plaintiff and she was unaware of the fraudulent transfers of her works.  Instead Basil has been a victim of Lait's affirmative concealment, which was only recently revealed to her on October 31, 2011 when Lait submitted a declaration with attached documents in the United States District Court – Southern District of New York in case number 11 CIV 5757 (JFK).  Assuming arguendo that Lait could legitimately transfer *Mickey* to an individual (which is

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

1  not the case according to contract), it would be mandatory for Lait to obtain Toni Basil's

2  written consent in order to comply with the express terms of the Controlling Agreement as

3  more fully described in paragraph 16 above citing to provision 11(b) of the Controlling

4  Agreement above.

5       34.    Lait did not obtain consent from Toni Basil for the Lait to Tucker transfer,

6  neither written nor verbal and continued to conceal this transfer, which was only

7  discovered by Plaintiff on or about October 31, 2011, when Lait filed a declaration under

8  penalty of perjury in the United States District Court – Southern District of New York.

9  Attached to Lait's declaration, Lait produced a string of transfer and/or assignment

10  documents including the attempted ineffective transfer from Lait to Tucker.   Lait did not

11  produce any documents evidencing Basil's written consent of the assignment because

12  Plaintiff alleges that none exist.

13       35.    On or about March 7, 1994, Tucker purportedly transferred and assigned

14  *Mickey* to Odel Finance Corporation, a Panamanian corporation where Tucker was the

15  principal.  Again, this transaction was concealed from Plaintiff and her written consent was

16  never obtained.  In addition, the Controlling Agreement was not listed in the asset

17  schedule.  Plaintiff only discovered this transfer on or about October 31, 2011, when Lait

18  filed a declaration under penalty of perjury in the United States District Court – Southern

19  District of New York.

20       36.    At some point in or around December 1995, Odel Finance Corporation

21  ineffectively attempted to transfer and assign Mickey to Odel Licensing Limited, a British

22  Isle offshore entity.  Again, this transfer was concealed from Plaintiff, her written consent

23  was not obtained for this transfer and she was unaware of this transfer until October 31,

24  2011.  In addition, the Controlling Agreement was not listed in the schedule of assets.

25       37.    On or about October 1, 1997, Odel Licensing Limited attempted an

26  ineffective transfer and assignment of Mickey to Twist and Shout Limited, a UK company.

27  Again, this transfer was concealed from Plaintiff, her written consent was not obtained for

28  this transfer and she was unaware of this transfer until October 31, 2011.  In addition, the

1  Controlling Agreement was not listed in the schedule of assets.

2      38.    On or about January 1, 2002, Twist and Shout Limited attempted an

3  ineffective transfer to defendant Stillwater.  Again, this transfer was concealed from

4  Plaintiff, her written consent was not obtained for this transfer and she was unaware of this

5  transfer until October 31, 2011.  In addition, the Controlling Agreement was not listed in

6  the schedule of assets.

7                                          *FACTS*

8      39.    Radialchoice and its purported successors in interest failed and continue to

9  fail to make, royalty payments or account for sales relating to the use of Toni Basil's

10  master recording of *Mickey* in violation of the Controlling Agreement;

11      40.    Toni Basil's right to publicity has been severely and irreparably harmed

12  where Defendants continuously exploit Plaintiff's name, voice, photograph and likeness

13  without consent or authority to do so for their own gain in complete disregard for Ms.

14  Basil's financial or emotional well being;

15      41.    Toni Basil became aware of a Subway commercial that was using her master

16  recording of her hit song "Mickey" in approximately January 2004.  Toni Basil had not

17  authorized the use of her performance and had not received any compensation for the

18  unauthorized use of her performance;

19      42.    In early 2004, Toni Basil, who was financially distressed, began a diligent

20  search for an attorney who would take the Subway commercial case on contingency.  In

21  addition, Toni Basil sought representation regarding clarification of her rights in the master

22  recording of her hit song *Mickey* as well as all of her other works that had been

23  copyrighted by her former record company Radialchoice.  She did extensive research and

24  interviewed numerous attorneys with specific music law backgrounds. After reading

25  several articles written by and/or featuring attorney Oren Warshavsky ("Warshavsky"),

26  Toni Basil contacted Gibbons P.C. ("Gibbons"), the firm where Warshavsky was

27  employed, to obtain representation.   Ultimately Warshavsky and Gibbons abandoned

28  Basil as a client and failed to uncover information relating to the status of Radialchoice.

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

43.     In September 2007, Basil requested help from a California attorney to find out the status of Basil's claims that Gibbons and Warshavsky were retained to handle. James T. Hudson, a California attorney who was working for Toni Basil on a completely unrelated matter agreed to provide limited inquiry help only to Basil.  Hudson wrote a letter on Toni Basil's behalf to Gibbons asking them to advise him of what course of action they intended on taking to pursue and protect Toni Basil's rights.

44.     On November 7, 2007, Gibbons responded to James T. Hudson's inquiries and informed him that they were no longer representing Toni Basil.

45.     After notice that Gibbons and Warshavsky had abandoned Basil and failed to properly investigate or prosecute her claims, Basil diligently sought contingent legal representation due to financial distress.  Basil's efforts were futile until September 2009, when she contacted her current counsel, F. Edie Mermelstein ("Mermelstein"), who agreed to investigate the underlying actions.  On February 17, 2010, Mermelstein filed a complaint for malpractice against Basil's former attorneys in New York Supreme Court Index Number 115524/09.

46.     Mermelstein performed extensive research to discover whether Radialchoice, the listed US Copyright holder of *Mickey and* the Toni Basil Masters was dissolved, and if so whether the dissolution was voluntary or involuntary, which is not information readily available in the public domain.  Mermelstein ordered the Radialchoice official documents from the United Kingdom's Companies House and weeks later she received microfiche. After obtaining a microfiche reader with printing capability, Mermelstein ultimately discovered the Radialchoice dissolution was in fact involuntary, which she believed triggered the reversion clause in the 1982 contract.  Unaware of the succession of fraudulent transfers noted above in paragraphs 25 to 36 (because no writing of transfer had been recorded with the US Copyright Office), Mermelstein on behalf of Basil contacted Lait on or about June 14, 2010, to inform him that Basil was the rightful owner of the Toni Basil Masters due to the reversion clause in the 1982 Recording Contract and demanded relinquishment of the Toni Basil Masters.

47.     On June 15, 2010, Lait responded to Mermelstein's demand for the chain of title to *Mickey* and the Toni Basil Masters referencing the Ultratape/Alarum sale and assignment, but no other transactions.  Mermelstein responded on June 15, 2010 and requested all written documentation purporting to have transferred *Mickey* and the Toni Basil Masters.  Lait responded on June 18, 2010, and stated that he would attempt to locate documents and would respond shortly.

48.     Mermelstein continued to research on behalf of Basil and found that approximately one week after Lait's email response, on or about June 25, 2010, there was an attempt to open a company with the name "Alarum" in the UK.  Mermelstein ordered all official documents referencing Ultratape/Alaram, and discovered that Ultratape/Alarum had also was involuntarily dissolved.

49.     On or about July 2, 2010, Mermelstein again attempted to contact Lait to get answers to Basil's questions regarding transfers and the chain of title.  On or about July 2, 2010, Lait responded and stated that he had trouble locating documents, but had retrieved some files and would be going over the documents and would provide as soon as they were located.

50.     On or about July 6, 2010, Lait provided a copy of the Ultratape/Alarum agreement and requested that Toni Basil cease claims of ownership.  Mermelstein on Basil' behalf informed Lait that research has also shown that Ultratape/Alarum was also involuntarily dissolved.

51.     On or about December 13, 2010, Mermelstein, representing Basil, sent a certified letter to R&T putting them on notice of Basil's believed ownership interest in *Mickey*.  In addition to informing R&T that it has no authority or permission to enter into any agreements to manufacturing, offer for sale, sell, advertise, market, or distribute Basil's performances of *Mickey* or commercially use Basil's name, likeness or voice.

52.     On or about December 29, 2010, R&T falsely claimed that Odel Finance Corporation and its successors and assigns legitimately licensed *Mickey* to R&T.  On or about February 17, 2011, Basil again contacted R&T to put them on notice that they have

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

1   no authority to license *Mickey.* Basil also informed R&T she had just become aware of

2   numerous licensures of *Mickey* and the use of Basil's name, likeness and/or voice for

3   commercial purposes was unauthorized. Basil also demanded and accounting. On or

4   about March 16, 2011, R&T responded claiming that they were not in agreement with

5   Plaintiff's allegations and claims.

6       53.     On or about April 4, 2011, in response to a March 29, 2011 letter from

7   Stillwater, Basil asserted ownership of *Mickey* and the Toni Basil Masters, demanded

8   return of the physical masters and asked Stillwater to provide documentation of any claims

9   to *Mickey*.

10      54.     On or about May 7, 2011, Stillwater sent a correspondence to Mermelstein

11  asking Basil to simply accept Stillwater's purported ownership without addressing or

12  providing any documentation to show that title was obtained legitimately. Additionally

13  Defendants have continually failed to provide any accounting or royalty payments to

14  Plaintiff.

15      55.     Believing Toni Basil was the rightful owner of the Toni Basil Masters based

16  on the involuntary dissolutions and the reversion clause in the 1982 contract which

17  required no action of law in the event the dissolutions were involuntary, on August 18,

18  2011, Plaintiff filed an *In Rem* proceeding in the United States District Court – Southern

19  District of New York, case number 11-CIV-5757 (JFK) ("USDC-NY Court"), based on the

20  fact that the physical location of the Toni Basil Masters which are in storage in a New

21  York location at R&T.

22      56.     On October 31, 2011, as a result of the *In Rem* filing, Stillwater and R&T

23  intervened and submitted a declaration from Simon Lait with written documents attached.

24  This was the first time Basil had access to these transfer documents which clearly show the

25  pattern of fraud and deceit perpetrated against Basil over nearly three decades.

26      57.     On January 17, 2012, Plaintiff's expert witness, Paul Hutchinson

27  ("Hutchinson"), submitted a declaration in support of Plaintiff's opposition to Stillwater's

28  motion to dismiss the *In Rem* proceeding. Through Hutchinson's review of documents, it

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

became clear the Controlling Agreement had never been effectively transferred and therefore *Mickey* and the Toni Basil Masters should have reverted to Plaintiff. Hutchinson determined that based on his in depth research on the usage and royalty analysis for the song, *Mickey*, the property has been highly profitable (in excess of $75,000) and remains commercially viable. Plaintiff is informed and believes that she is the rightful owner of the master recording and is entitled to the profits made from *Mickey*, or in the alternative an accounting and payment of royalties.

58.     On or about February 14, 2012, R&T released "*Mickey 30th Anniversary EP*" without obtaining permission from Toni Basil, who had put Defendants on notice of her claim of ownership in the copyright of *Mickey*.

59.     On March 15, 2012, the USDC-NY Court determined the complaint filed in case number 11-CIV-5757-JFK lacked subject matter jurisdiction because Basil asserted jurisdiction solely based on the Declaratory Judgment Act, which the Court determined did not confer subject matter jurisdiction and dismissed the case without prejudice.

60.     This complaint follows and asserts the following claims for relief – (1) Fraud or Deceit; (2) Misappropriation of Likeness in Violation of California Civil Code §3344; (3) Misappropriation of Name and Likeness in Violation of Common Law; (4) Unjust Enrichment; (5) Involuntary Trust; (6) Rescission based on Fraud and/or Lack of Consideration; (7) Violation of Business & Professions Code § 17200, *et seq*; (8) Breach of Contract; (9) Accounting; and (10) Declaratory Relief.

## FIRST CLAIM FOR RELIEF

### Fraud or Deceit

### Against All Defendants

61.     Plaintiff realleges and incorporates here the allegations contained in paragraphs 1 through 60 above.

62.     Every representation made by Defendants, and each of them, regarding the chain of title to *Mickey* and the legitimacy of the licensing as alleged in paragraphs above

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

1    were false.

2        63.    Said false representations were known by Defendants, and each of them, to

3    be false at the time they were made.  The truth was that at the time false representations

4    were made, Defendants had no lawful rights to *Mickey* yet they had been exploiting Toni

5    Basil's name, likeness and voice to generate income from the very lucrative master

6    recording and music video of *Mickey*, without Plaintiff's knowledge or permission.

7        64.    Said false representations were made with the intent to deceive and defraud

8    the Plaintiff, actual and potential commercial purchasers of *Mickey* and the public.

9        65.    Plaintiff actually and justifiably relied on said false representations and was

10   damaged as a direct and proximate result of said false representations in an amount

11   according to proof.

12       66.    Said false representations were made with oppression, fraud and malice.

13

14                        **SECOND CLAIM FOR RELIEF**

15   **Misappropriation of Likeness in Violation of California Civil Code §3344**

16                           **Against All Defendants**

17       67.    Plaintiff hereby incorporate all paragraphs above as though set forth fully

18   herein.

19       68.    Defendants have violated the rights of Plaintiff Toni Basil by knowingly and

20   intentionally using her photographs, likeness and voice without her prior consent, for

21   commercial purposes gain and profit directly in connection with manufacturing, offering

22   for sale, selling, advertising, marketing, and distributing performances of *Mickey*.

23       69.    The use of the photographs of Plaintiff, in connection with manufacturing,

24   offering for sale, and selling, advertising, marketing, and distributing performances of

25   *Mickey*, has directly resulted in substantial and ongoing harm and injury to Basil in that,

26   among other things, her photographs, likeness and voice are falsely associated with

27   commercial products licensed and sold by Defendants.

28       70.    As a direct and proximate result of the conduct of Defendants, Plaintiff Toni

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

Basil is statutorily entitled to the recovery of both her actual damages and general and compensatory damages related to Defendants' manufacturing, offering for sale, and selling, advertising, marketing, and distributing performances of *Mickey*, the precise amount of which shall be established at trial according to proof but which, Plaintiff is informed and believes and based thereon allege, exceeds $1,000,000.00.

71.    As a further direct and proximate result of Defendants' knowing, willful, and conscious disregard for the rights of Plaintiff, Defendants are guilty of oppression, fraud, and malice, entitling Plaintiff to an award of punitive damages.

72.    Plaintiff is informed and believes and based thereon allege that Defendants have continued to manufacture, offer for sale, and sell, advertise, market, and distribute performances of *Mickey*.  Unless and until Defendants are enjoined and restrained by order of this Court, Plaintiff will continue to suffer great and irreparable injury, in that her photographs, likeness and voice will be falsely associated with commercial products licensed and sold by Defendants.  Plaintiff has no adequate remedy at law for such injury.

## THIRD CLAIM FOR RELIEF

### Misappropriation of Name and Likeness in Violation of Common Law

### Against All Defendants

73.    Plaintiff hereby incorporate all paragraphs above as though set forth fully herein.

74.    Defendants have violated Plaintiff Toni Basil's exclusive rights by knowingly and intentionally using Plaintiff's photographs, likeness and voice without her prior consent, for commercial purposes, gain and profit, in connection with manufacturing, offering for sale, and selling, advertising, marketing, and distributing performance of *Mickey*.

75.    The use of the photographs of Plaintiff, in connection with manufacturing, offering for sale, and selling, advertising, marketing, and distributing performances of *Mickey*, has directly resulted in substantial and ongoing harm and injury to Basil in that,

among other things, her photographs, likeness and voice are falsely associated with commercial products licensed and sold by Defendants.

76.     As a direct and proximate result of the conduct of Defendants, Plaintiff Basil is entitled to the recovery of both her actual damages and general and compensatory damages related to Defendants' manufacturing, offering for sale, and selling, advertising, marketing, and distributing the performance of *Mickey*, the precise amount of which shall be established at trial according to proof but which, Plaintiff is informed and believes and based thereon alleges, exceeds $1,000,000.00.

77.     As a further direct and proximate result of Defendants' knowing, willful, and conscious disregard for the rights of Plaintiffs, Defendants are guilty of oppression, fraud, and malice, entitling Plaintiffs to an award of punitive damages.

78.     Plaintiff is informed and believes and based thereon alleges that Defendants have continued to manufacture, offer for sale, and sell, advertise, market, and distribute performances of *Mickey*.  Unless and until Defendants are enjoined and restrained by order of this Court, Plaintiff will continue to suffer great and irreparable injury, in that her photographs, likeness and voice will be falsely associated with commercial products licensed and sold by Defendants.  Plaintiff has no adequate remedy at law for such injury.

## FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### Against All Defendants

79.     Plaintiff hereby incorporate all paragraphs above as though set forth fully herein.

80.     By means of the fraud and other acts alleged above, Defendants, and each of them, acquired money and property, with the knowledge of said fraudulent and wrongful acts, including specifically proceeds from the manufacturing, offering for sale, and selling, licensing, advertising, marketing, and distributing the performance of *Mickey* and the profits and dividends generated by such sales and licensure, such that Defendants hold

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

1    such profits and dividends in constructive trust for Plaintiff and/or must make restitution to

2    Plaintiff in a sum sufficient to deprive Defendants of all unjust enrichment derived from

3    the sale and licensure of *Mickey*, including but not limited to all proceeds and profits

4    derived in the United States, Canada and worldwide.

5

6                              **FIFTH CLAIM FOR RELIEF**

7                                 **Involuntary Trust**

8                                **Against All Defendants**

9        81.    Plaintiff hereby incorporate all paragraphs above as though set forth fully

10   herein.

11       82.    By means of fraud, accident, mistake, undue influence, the violation of trust

12   or other wrongful acts alleged above, Defendants, and each of them, acquired money and

13   property, including specifically revenue generated from the sales and licensure of *Mickey*

14   and all proceeds and profits derived from said sales and licensure in the United States,

15   Canada and worldwide and wrongfully retained said money and property such that they

16   became involuntary trustees of such money and property for the benefit of Plaintiff

17   pursuant to California Civil Code §§2223 and 2224.

18

19                              **SIXTH CLAIM FOR RELIEF**

20              **Rescission based on Fraud and/or Lack of Consideration**

21                     **Against Lait, Stillwater, and Solomon**

22       83.    Plaintiff hereby incorporate all paragraphs above as though set forth fully

23   herein.

24       84.    While the Controlling Agreement by which Plaintiff granted any rights in

25   and to *Mickey* was fraudulently and/or ineffectively transferred, Plaintiff has given and by

26   this complaint hereby gives, notice of rescission and hereby offers to restore everything of

27   value received from Defendants Lait, Solomon and Stillwater conditioned on simultaneous

28   restoration to Plaintiff of all of the sound recordings, music videos, musical compositions,

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

US and worldwide copyrights featuring the performances of Toni Basil and any rights thereto in *Mickey*.

85.     Plaintiff is entitled to rescission of any agreements that may exist that purport to control *Mickey*, based on fraud and lack of consideration.  Lait, Solomon and Stillwater have refused to account or make payments in accordance with the Controlling Agreement assuming the Controlling Agreement is even valid.

86.     Lait and all of his alter egos never had any intention of performing under the Controlling Agreement.  Lait, through his alter ego Radialchoice, promised that he would perform under the Controlling Agreement as required.  But for the representations and promises made to Plaintiff by Lait, Plaintiff would not have entered into or consummated the Controlling Agreement.

87.     The representations and concealments made by Lait were made with the intent to deceive Plaintiff and to induce her to enter into and consummate the Controlling Agreement.

88.     Plaintiff reasonably relied on Lait's oral and written representations when entering into the Controlling Agreement.

89.     Plaintiff hereby alleges that had she had knowledge of the falsity of Lait's intentions, she would not have entered into the Controlling Agreement.

90.     As a proximate result of the alleged conduct by Lait, Plaintiff is entitled to rescind the Controlling Agreement and to recover any consideration, including but not limited to any and all rights granted in and to all of the sound recordings, music videos, musical compositions, US and worldwide copyrights featuring the performances of Toni Basil and any rights thereto in *Mickey*.

91.     Plaintiff is entitled to restitution of her costs, expenses and damages incurred as a result of actions of Defendants and each of them in order to restore the parties to their respective positions as they existed prior to said transactions.  The amount required for such rescission and restitution is unknown and will be according to proof at trial.\

92.     Defendant Lait's actions as described above were willful, oppressive and in

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

1   conscious disregard of Plaintiff's rights in and to *Mickey*.  Additionally, Defendant has

2   refused to cease and desist from such prohibited activities despite Plaintiff's demand to

3   discontinue his fraudulent, unfair and unlawful activities.  These additional facts warrant

4   an award of punitive and exemplary damages in an amount to sufficiently punish and deter

5   similar conduct from others engaging in the same wanton and willful bad acts.

6

7                           **SEVENTH CLAIM FOR RELIEF**

8           **Violation of Business & Professions Code § 17200, et seq.,**

9                              **Against All Defendants**

10          93.     The preceding paragraphs of this Complaint are realleged and incorporated

11  by reference.

12          94.     Business and Professions Code § 17200 *et seq.*, prohibits acts of unfair

13  competition which shall mean and include any "unlawful, unfair, or fraudulent business act

14  or practice." Plaintiff alleges that at all relevant times Defendants, and each of them, have

15  engaged in unfair business practices in California by utilizing the illegal, unfair fraudulent

16  and/or unlawful practices outlined above, including causing Plaintiff's to have her name,

17  voice, photograph and likeness continuously exploited without her consent or the authority

18  to do so in complete disregard for Ms. Basil's financial or emotional well being.

19          95.      Defendants' business acts and practices are unlawful and violate Civil Code

20  §§2223, 2224 and 3344.  Furthermore, Defendants' marketing, advertising, promotion,

21  offering for sale, and sale of *Mickey* constitute unfair business practices, unfair

22  competition, and provide an unfair advantage over Defendants' competitors that actually

23  account and pay royalties to artists.

24          96.     Defendants' actions entitle Plaintiff to seek the remedies available pursuant

25  to Business and Professions Code §17200 *et seq.* in the form of restitution and injunctive

26  relief as authorized under Business and Professions Code §17203.

27          97.     Plaintiff seeks full restitution and disgorgement of said monies from

28  Defendants, as necessary and according to proof, to restore any and all monies, including

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

interest, withheld, acquired or converted by Defendants by means of the unfair practices complained of herein.  Plaintiff further seeks the appointment of a receiver as necessary.  Plaintiff also seeks an injunction and declaratory relief to remedy and prevent Defendants' improper activities and practices.

98.    Plaintiff also requests relief as described more fully below.

## EIGHTH CLAIM FOR RELIEF

### In the Alternative: Breach of Contract

### Against Lait, Stillwater and Solomon

99.    Plaintiff incorporates herein by reference, to the extent applicable, each and every allegation contained hereinabove.

100.    Basil has performed any and all obligations to be performed on her part pursuant to the terms of the Controlling Agreement.

101.    Defendants, Lait, Stillwater, Solomon and any of their predecessors in the Chain of Title and each of them, have breached the Controlling Agreement by, among other things: (i) failing to accurately account and pay Basil her full and complete share of Artiste Royalties; (ii) failing to accurately account and pay to Basil her full and complete share of Third Party License income; (iii) coupling Basil's master recordings with the master recordings of other artists without first obtaining Basil's authority for such use; and (iv) including Basil's master recordings in television shows, theatrical films and/or television/radio commercials and/or video games without first obtaining Basil's authority for such use;

102.    By virtue of the above, Basil has been damaged in an amount unknown to be determined at trial.

## NINTH CLAIM FOR RELIEF

### Accounting

### Against Lait, Solomon and Stillwater

103.    Plaintiff incorporates herein by reference, to the extent applicable, each and

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

every allegation contained hereinabove.

104. Defendants, Lait, Solomon and Stillwater and continuously fail to fully and completely account and pay Basil for royalties derived by *Mickey* as set forth in the Controlling Agreement (assuming the Contract is deemed to be in force), Artiste Royalties and Third Party License Income from Defendants' direct manufacture and third party licensing in an amount unknown to Plaintiff at this time.

105. Upon an accounting by Defendants to Plaintiff there will be found to be due to Basil large sums of monies, the amount of which are not known to her at this time.

106. Heretofore and prior to the commencement of this action, Basil has duly demanded of Defendants an accounting of such monies belonging to her; however, Defendants have failed, omitted and refused to render, and have never rendered, such an accounting, nor paid any such monies in full, to Basil.

107. Basil has no adequate remedy at law.

### TENTH CLAIM FOR RELIEF
### Declaratory Relief
### Against All Defendants

108. Plaintiff incorporates herein by reference, to the extent applicable, each and every allegation contained hereinabove.

109. An actual controversy and dispute has arisen over the rights and ownership of the sound recordings, musical compositions and other performances on music video of *Mickey.*

110. Plaintiff seeks a declaration and judicial determination that none of the Defendants herein have any rights to any of the sound recordings, musical compositions and other performances on music video of *Mickey.*

### *PRAYER FOR RELIEF*

WHEREFORE, Plaintiff prays for judgment as follows:

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

1        A.   That this Court award compensatory damages including but not limited to

2   profits lost due to Defendants' conduct and other consequential damages, in an amount

3   according to proof;

4        B.   That this Court award punitive damages in an amount appropriate to punish

5   Defendants, to deter others from engaging in such conduct, and to set an example of

6   Defendants;

7        C.   That this Court award the greater of actual damages according to proof or

8   statutory damages under Civil Code §3344;

9        D.   That this Court award emotional distress damages;

10       E.   That this Court enters a judicial declaration that Defendants have no rights to

11  the sound recordings, musical compositions, music video or other materials embodying

12  *Mickey;*

13       F.   That this Court award a preliminary and permanent injunction enjoining

14  Defendants and their respective officers, agents, servants, employees, and attorneys, and

15  all persons in active concert or participation with each or any of them, from directly

16  committing, aiding, encouraging, enabling, inducing, causing, materially contributing to ,

17  or otherwise facilitating the unauthorized reproduction, sale, licensing or distribution of

18  copies of *Mickey*;

19       G.   That this Court order Defendants to account to Plaintiff;

20       H.   That this Court order Defendants to disgorge all profits and proceeds earned

21  relative to the exploitation of *Mickey;*

22       I.   That this Court rescinds any contract;

23       J.   That this Court order Defendants to turn over and deliver all of the Toni

24  Basil Masters, including *Mickey* to Plaintiff;

25       K.   That this Court impose a constructive trust on all property acquired by

26  Defendants as a result of their malfeasances;

27       L.   That this Court award Plaintiff's actual costs incurred for this action,

28  including, but not limited to, reasonable attorneys' fees;

1      M.    That this Court award of prejudgment and post judgment interest on all

2  sums;

3      N.    That this Court order such further relief as justice may require, or as this

4  Court deems necessary.

6          **DEMAND FOR JURY TRIAL**

7    Plaintiff hereby demands a jury trial for all issues so triable.

9  Dated:  June 14, 2012          LAW OFFICES OF F. EDIE MERMELSTEIN

10          By:

          F. Edie Mermelstein

          *Attorneys for Plaintiff*

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

**EXHIBIT 1**

# ACKNOWLEDGMENT

State of California
County of _____ Los Angeles _____ )

On _January 16, 2012_____ before me, _Michael Mermelstein_____
(insert name and title of the officer)

personally appeared ___Antonia Christina Basilotta_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

MICHAEL MERMELSTEIN
COMM. #1950716
Notary Public - California
Orange County
My Comm. Expires Sep. 2, 2015

Signature _____   **(Seal)**

## OPTIONAL INFORMATION

*Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this
Acknowledgment Form to an unauthorized document and may prove useful to persons relying on the attached document.*

DESCRIPTION OF ATTACHED DOCUMENT
This certificate is attached to a document titled

This Agreement

containing _15_ pages, and dated _8-31-1979_

**Additional Information**
Method of Affiant Identification:

Proved to me on the basis of satisfactory evidence:
☑ Form(s) of identification  C D L
☐ Credible Witness(es) ●

Notarial event is detailed in notary journal on
PAGE # _3_      Entry # _8_

OTHER:
☑ Affiant's Thumbprint

T H I S      A G R E E M E N T

is made the    31st    day of August

One thousand nine hundred and seventy-nine BETWEEN RADIALCHOICE LIMITED whose registered office is at 25/27 Oxford Street London W.1. England (hereinafter called "the Company") of the one part and TONI BASIL of

(hereinafter called "the Artist") of the other part WHEREBY IT IS AGREED :-

1.      THE Artist hereby undertakes with the Company and agrees during the period commencing with the date hereof and expiring six (6) months hereafter (hereinafter called "the first period of the Term") to render her services to the Company for the world (hereinafter called "the Territory") as follows :-

(a) to render her services to the best of her skill and ability in recording three (3) Titles so that the Company may release a first-class single record

(b) the said compositions shall be suitable for release as a single record shall not contain defamatory or obscene material and the Company shall be able to obtain a mechanical licence at normal or statutory rates

2.      THE Artist hereby agrees that all master recordings hereunder shall be and remain the property of the Company for perpetuity and the Company is hereby granted for perpetuity throughout the world

- 2 -

all rights of copyright and all other rights in and
to the master recordings hereunder the performances
embodied therein including the sole and exclusive
rights as follows :-

(a) the right to manufacture and sell and
otherwise exploit records derived from the master
recordings without restriction as to the quantity
and make authorise or prohibit such manufacture sale
and exploitation anywhere in the Territory under any
such trademarks trade names or labels as it may be
in its absolute discretion decide

(b) the right to sell sell license or
otherwise dispose of any of the master recordings
hereunder or recordings embodied therein

(c) the right to perform and to authorise
other parties to perform the records derived from
the master recordings for all and any purposes
including but not by way of limitation broadcasting
thereof by radio and television video recording
film and video-disc

(d) the right to authorise and/or prohibit
the use of the names pseudonyms or professional names
facsimile signatures and photographic or other
likenesses of the Artist as well as any biographical
information concerning the Artist in connection with
the records hereunder

- 3 -

3.      THE Artist shall render recording services
exclusively for the Company during the Term and in
the Territory and shall not in any circumstances during
the Term:-

(a) render such recording services to any other
firms or companies in her own name or under any other
including not only the name and pseudonym or professional
name she now uses but also any she may intend to use in
the future

(b) without the written consent of the Company
allow her name pseudonym or professional name as above
mentioned as a recording artist to be used in connection
with any record label covering printing advertising
and publicity connected with record sales unless they
belong to the Company

(c) record or knowingly allow performances by
herself to be recorded either alone or accompanied by
any means and for any person firm or company other than
the Company for the purpose of the manufacture sale
and distribution of records in any country of the
Territory

(d) incur or purport to incur any expenditure
or costs of any kind whatsoever on behalf of the
Company without the previous written consent of the
Company

4.      (a) THE Company shall bear the studio
musicians and all other costs incurred in making the
recordings hereunder pursuant to a budget agreed
between the parties which costs shall include such
fees and advances which are payable to any individual
producer of the records hereunder all of which costs
shall be treated as non-returnable advance payments
on account of the royalties due to be paid to the

- 4 -

Artist under this Agreement

(b) In the event that the Company decides that any master recording is not of a satisfactory technical or artistic standard the Company (without prejudice to its other rights) shall be entitled to require that such master recording be re-recorded until such master recording attains the required standard as aforesaid

5. (a) THE Artist shall attend with her consent (not to be unreasonably withheld) and upon reasonable notice any photographic and/or publicity sessions for the purpose of permitting the Company to take such photographs as the Company may require in relation to the launching publicity and marketing for the distribution of the records hereunder without any payment therefor

(b) Periodically during the Term the Artist shall appear in publicity promotions such as press receptions radio and television programmes and films as shall be requested by the Company

6. THE Artist shall not for a period of five (5) years after the Term of this Agreement shall have expired re-record any of the Titles included in any of the master recordings hereunder

7. UNTIL such time as the aggregate of the total of the royalties earned on records sold hereunder shall have exceeded the total of the recording and other costs charged by the Company pursuant to Clause 4 hereof and any advance payable hereunder the Artist shall not be entitled to be paid any royalties hereunder

8. PROVIDED that the Artist shall have performed all her obligations hereunder in accordance with this

- 5 -

Agreement the Company agrees to pay to the Artist a royalty in respect of records sold by or through the Company hereunder embodying the performances of the Artist hereunder at the following rate:-

(a) with respect to the first one hundred thousand (100,000) copies of any record sold in any country of the Territory (two hundred and fifty thousand (250,000) copies in the United States of America) at the rate of SEVEN PER CENT (7%) on sales in such country

(b) with respect to the next one hundred thousand (100,000) copies of such record sold in such country (two hundred and fifty thousand (250,000) copies in the United States of America) at the rate of EIGHT PER CENT (8%)

(c) with respect to all copies sold thereafter in such country at the rate of NINE PER CENT (9%) PROVIDED THAT if the Company is paid a royalty with respect to any country by its licensees in excess of Sixteen per cent (16%) the above mentioned rates for such country shall be increased by ONE PER CENT (1%)

9.       (a) ALL royalties payable hereunder shall be determined on 90% or 100% (as the Company is accounted to) of records sold by the Company or its licensees and paid for the said percentage or amount being computed on the basis of the recommended retail price of such records (as determined by the Company's licensees in accounting to the Company) after deduction of taxes and container charges (as calculated by the Company's licensees)

(b)(i) The royalty payable with respect to records sold outside the United Kingdom shall be computed at the election of the Company in the national currency of the country of

- 6 -

manufacture or sale (as aforesaid) at the
rate of exchange in effect at the time of
payment to the Company. The Company shall
use its best endeavours to remit foreign
royalties to the United Kingdom where possible
Such royalties less any taxes shall be payable
to the Artist only after payment for sales to
which such royalties are applicable have been
received by the Company in the United Kingdom,
In the event that the Company is unable to or
does not receive payment in the United Kingdom
then at the election of the Company shall
the Artist
deposit to the account of the Artist the
royalties payable to the Artist hereunder with
a depository selected by the Artist and located
in the country of payment    Deposit and notice
thereof to the Artist shall discharge the royalty
obligation of the Company for record sales to
which such royalties are applicable

(ii) With respect to records sold through record
clubs or any other direct to consumer operations
the royalty shall be at one-half ($\frac{1}{2}$) of the
rate otherwise applicable and the royalty base
shall be the actual selling price to the
consumer of each such record sold (less the
Company's said container charges and sales
value added and other taxes if any) of 90%
or 100% (as appropriate) of records so sold

(iii) With respect to records sold on budget
or low priced labels such labels being defined
as those which bear a retail list price of
less than three-quarters ($\frac{3}{4}$) of the retail
price (in the country of sale) of records of

- 7 -

the same designation issued by the Company or
its licensees on prime label categories or
their equivalent the royalty shall be at
one-half ($\frac{1}{2}$) of the rate otherwise applicable

(iv) With respect to records sold embodying
Titles recorded by the Artist hereunder coupled
with other Titles (hereinafter called "compilation
albums") the royalty shall be at that proportion
of the rate otherwise applicable which the
number of Titles embodying performances
recorded by the Artist hereunder bears to the
total number of Titles recorded by other royalty
earning artists on such record provided that
in the case of compilation albums marketed by
third parties through television advertising
the royalty shall be one-half ($\frac{1}{2}$) of the rate
otherwise applicable

(v) With respect to records sold to any
government its sub-divisions departments and
agencies to military exchanges and to
educational institutions and libraries the
royalty shall be one-half ($\frac{1}{2}$) of the rate
otherwise applicable

(vi) With respect to records sold to commercial
purchasers for use by them as premiums
promotional items sales incentives or for
similar purposes the royalty shall be at
one-half ($\frac{1}{2}$) of the rate otherwise applicable
and the royalty base shall be the actual
selling price to such purchasers (less the
Company's said container charge as aforesaid
and less sales value added and other taxes if
any) of ninety per cent (90%) of records so sold

- d -

(vii) No royalty shall be payable on records
distributed free as samples or for the purpose
of publicity or sold as discontinued goods

10.     (a) THE Company shall make up and render to
the Artist accounts of the royalties payable hereunder
at the 30th June and 31st December in each year relating
to all records hereunder which were sold during the
relevant accounting period and when rendering the
relevant account shall pay to the Artist any amount
thereby shown to be remaining due subject to Clause 7
hereof   Each royalty statement shall be made up within
ninety (90) days of the end of the accounting period
to which it relates   Each Statement shall become final
and binding unless within two (2) years of the rendering
thereof the Artist advises the Company in writing of any
objection to it setting forth the basis for objection

(b) The Artist shall be entitled to appoint
at the Artist's expense an independent chartered
accountant to inspect at the premises of the Company
those books of the Company which relate specifically
to sales made by the Company hereunder during business
hours twice each year at the expense of the Artist
The books of the Company may only be inspected with
respect to any accounting period during a period of
two (2) years computed from the date upon which the
relevant statement was rendered

(c) The Company shall be entitled to maintain
reserves on account of records returned or exchanged
and to make adjustments in royalty payments subsequently
based on actual records returned or exchanged   In.
the event reserves are insufficient to cover records

- 9 -

returned or exchanged the Company will charge the
applicable royalty account for any such excess
returns or exchanges   In any event any and all such
reserves shall not exceed the reserves maintained by
the Company's respective licensees

(d) Notwithstanding anything in this
Agreement contained to the contrary the percentage
reductions in royalty rates contained in Clause  9(b)
and the provisions of Clause 10(c) shall in no event
be more prejudicial to the Artist than the corresponding
clauses in the Company's contracts with its licensees
are to the Company

11. _____ (a) THE rights and privileges to which the
Artist is entitled by virtue of this Agreement may not
be assigned disposed of charged or transferred by the
Artist

(b) The Company may assign this Agreement
together with its rights and obligations to such third
party as it may elect with the Artist's consent in
writing PROVIDED THAT the Company may so assign without
consent to any company owned or controlled by Simon
Lait or in which the said Simon Lait holds or shall
hold a majority shareholding interest

12. _____ THE Artist warrants undertakes and agrees:-

(a) that she has not entered nor will enter
in any agreement with a third party which in any way
whatsoever conflicts or is incompatible with any of
the terms of this Agreement or derogates from or affects
any rights granted to the Company hereunder

(b) that she will observe all requirements
of unions having jurisdiction in connection with the
recording of master recordings

- 10 -



(c) to give the consents required by the
Performers' Protection Acts 1958-1972 and the execution
hereof shall be deemed to be such consent

13.    THE Artist shall co-operate fully in any
controversies or litigation which may be required to
prevent the distribution of records not authorised
pursuant to the terms of this Agreement or to prevent
the use of the Artist's name facsimile signature
likeness biographical material and other identification
in contravention of the rights granted to the Company
hereunder    The Company may take such steps of
instituting such legal action or proceedings in the
Company's name or in the Artist's name or in their
joint names as the Company may deem suitable    The
Artist hereby appoints the Company as lawful attorney-
in-fact to do all things permitted or contemplated
pursuant to the terms hereof    Nothing herein shall
be construed as a limitation on the warranties and
indemnities made to the Company herein

14.    (a) THE initial Contract period of the Term
shall be the six-month period referred to in Clause 1
hereof    The Company shall pay to the Artist on
execution hereof by way of non-returnable advance on
account of royalties hereunder the sum of SEVEN THOUSAND
FIVE HUNDRED UNITED STATES DOLLARS ($7,500)    Such
period may be extended by the Company by prior written
notice to such effect for a further Contract period of
six months upon the same terms and conditions save that
there shall be no further advances payable other than as
herein below specified and the Company shall be entitled
require the Artist to record a long-playing record
instead of three (3) Titles (which at the election of
the Company may consist of the three three Titles or any
of them) whereupon the Company shall pay the Artist

- 11 -

a non-returnable advance on account of royalties of
SEVEN THOUSAND FIVE HUNDRED UNITED STATES DOLLARS
($7,500) upon delivery of technically satisfactory
masters for such long-playing record in the second
six-month period

(b) The Artist hereby grants to the Company
two (2) further separate and successive options
(to be exercised by prior written notice to such
effect) to extend the above-mentioned periods by
two (2) further separate and successive Contract
periods of one (1) year each upon the same terms and
conditions save as in this Clause specified    In
each such period the Artist shall record a minimum
of one (1) new long-playing record and a maximum of
two (2) new long-playing records as the Company shall
request    The advance payable with respect to each
such record in the first such annual period shall be
TWENTY-FIVE THOUSAND UNITED STATES DOLLARS ($25,000)
and in the second such annual period THIRTY-FIVE THOUSAND
UNITED STATES DOLLARS ($35,000) all such advances to
be paid as to one-half ($\frac{1}{2}$) on commencement of recording
and the balance on the delivery of technically satisfactory
masters for each such record

15.    THIS Agreement sets forth the entire agreement
between the parties with respect to the subject matter
hereof and no modification amendment waiver termination
or discharge of this Agreement or any provision thereof
shall be binding upon either party unless confirmed by
a written instrument signed by the parties    No waiver
of any provision of or default under this Agreement
shall affect either party's rights thereafter to
enforce such provision or to exercise any right or
remedy hereunder    This Agreement and any and all

- 12 -

extensions and/or modifications thereof shall be governed by the laws of England

16.    ALL notices and statements hereunder or in connection herewith shall be in writing and shall be addressed as follows :-

> To: the Artist at the address of the Artist above mentioned
>
> To: the Company at 17 Nelson Road Greenwich London S.E.10.
>
> Attention: Mr. Simon Lait

or such other address as the respective parties hereto may designate in writing

17.    FOR the purposes of this Agreement the following words shall have the meanings respectively set out opposite them if not inconsistent with the subject or context:-

(a) "MASTER RECORDING" : The words "master recording(s)" mean the original material object in which sounds with or without visual images are fixed by any method now known or later developed and from which sounds with or without visual images can be perceived reproduced or otherwise communicated either directly or with the aid of a machine or device

(b) "RECORDS" : The word "record(s)" means any reproduction of a master recording in any form now or later developed in which sounds with or without visual images can be perceived reproduced or otherwise communicated either directly or with the aid of a machine or device and includes the material object in which sounds with or without visual images are fixed including but not limited to disc records sound tracks film tape cartridges and other devices

- 13 -

(c) "RECORDS SOLD" : The words "Sales" "records sold" and "record sales" mean such records which are produced sold and paid for hereunder and in respect of which the Company is paid royalties pursuant to the Company's arrangements with its licensees and distributors

(d) "MATERIAL" : The word "material" means any work or series of musical instrumental spoken or other sounds in combination or otherwise capable of fixation on a record whether dramatic literary musical or otherwise and whether performed by the Artist vocally instrumentally or otherwise or in combination thereof

(e) "PERFORMANCE" : The words "performance" and "perform" mean the Artist's rendition of services in recording material for a master recording and/or a record as a soloist or as a member of a group and whether as a vocalist instrumentalist leader or musician

(f) "TITLE" : The word "Title" means musical composition whether vocal or non-vocal performed or to be performed by the Artist pursuant to this Agreement

(g) "CONTRACT PERIOD" : The words "Contract period" shall mean whichever shall be the longer of the appropriate period specified in Clause 14 hereof or a period of four (4) months from the completion of artistically and technically satisfactory master recordings for the Artist's recording commitment in such period PROVIDED THAT no Contract period shall exceed a period of TWO (2) years

(h) "TERM" : The word "Term" means the first period set forth in Clause 1 hereof together

- 14 -

with any further period as has been provided for
hereinbefore by the exercise of any options by the
Company

16. _____ NOTWITHSTANDING anything to the contrary,
agreed between the parties hereto that:

(a) All visual material including but not
limited to album design must have the prior approval
of the Artist, *which approval shall not be unreasonably
withheld*

(b) As a condition precedent to Company's
right to exercise their option herein, Company shall
commercially release masters in the territory.

(c) In no event will Company, its licensees
or assigns produce a video tape or disc featuring the
masters or any of them without the prior approval of
Artist, which approval will not be unreasonably withheld.

(d) Upon commencement of recording the
first album (that is after completion of the initial
three titles) Company will advance Artist the $7500.00
mentioned in Paragraph 14(a) hereof.

(e) Company will make available "up to"
$7000.00 to be paid upon request by Brian Avnet upon
presentation of a pro forma invoice of said rehearsal/
routining of musical titles to be contained in the album
and Company's reasonable approval thereof. Such advance
shall be considered recoupable as part of the recording
budget.

(f) The restriction contained in Paragraph 6
hereof shall apply only after masters have been commercial-
ly *released in United States and Canada by import*
or the United Kingdom or Germany, Austria, Switzerland,
Benelux, France, *the restriction shall be unlimited consequences until further*

- 15 -

(g) Each L.P or single recording hereunder
will be released in each part of the territory hereof
within six months of delivery to Company, provided
that in the event Company fails to release said record
within ninety days after notice from Artist to Company
served upon the expiration of such six-month, preceding
period specifying that part or those parts where a
release is desired, Artist may release the record in
such unreleased parts through a third company whereupon
the terms of this agreement shall apply in all respects
save that after recoupment (if at all) of the applicable
L.P. advance and recording costs by Company from the
royalties due hereunder to the Artist in respect to the
record concerned the royalty rate will be
varied so that the Artist will receive the entire royalty
directly from said third party less a two percent royalty
which shall be paid to the Company. In any event, Company's
undeflying rights in the masters will not be sold, licensed
or leased to such third party for a longer period than
Company normally sells, leases or licenses its masters.

I N     W I T N E S S  whereof the parties hereto
have entered into this Agreement the day and year
first above written

SIGNED by
for and on behalf of
RADIALCHOICE LIMITED
in the presence of:-

TOKI BASIL  in the
presence of:-

**EXHIBIT 2**

# ACKNOWLEDGMENT

State of California
County of _____ Los Angeles _____ )

On ___ January 16, 2012 _____ before me, ___ Michael Mermelstein _____
_____
(insert name and title of the officer)

personally appeared ___ Antonia Christina Basilotta _____ ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

> MICHAEL MERMELSTEIN
> COMM. #1950716
> Notary Public · California
> Orange County
> My Comm. Expires Sep. 2, 2015

Signature _____   **(Seal)**

---

OPTIONAL INFORMATION

*Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this*
*Acknowledgment Form to an unauthorized document and may prove useful to persons relying on the attached document.*

DESCRIPTION OF ATTACHED DOCUMENT
This certificate is attached to a document titled

> Agreement

containing __6__ pages, and dated __10-1-1980__

**Additional Information**
Method of Affiant Identification:

Proved to me on the basis of satisfactory evidence:
☑ Form(s) of identification   C DL
☐ Credible Witness(es)

Notarial event is detailed in notary journal on
PAGE # __5__   Entry # __1__

OTHER:
☑ Affiant's Thumbprint



## AGREEMENT

Reference is hereby made to that certain recording Agreement (hereinafter "Agreement") made August 31, 1979 by and between RADIALCHOICE LIMITED (in the Agreement and hereinafter referred to as "Company") and TONI BASIL (in the Agreement and hereinafter referred to as "Artist").

WHEREAS:

Company and Artist have agreed to amend certain provisions in the Agreement and as hereinafter appearing.

WHEREBY IT IS AGREED:

1. Pursuant to paragraph 1(a) of the Agreement, Company has heretofore recorded three (3) titles featuring the recorded performances of the ARtist. Said titles were recorded with a view to Company releasing a first class single record (hereinafter "Single"). Pursuant to paragraph 18(b) of the Agreement, Company, as a condition precedent to its rights to exercise the option in paragraph 14(a) of the Agreement appearing, was obligated to commercially release master recordings featuring the Artist in the Territory. It is hereby agreed that notwithstanding the provisions of paragraph 1(a), 18(b) and 18(g) of the Agreement, Company shall be under no obligation to so release the Single. Notwithstanding the foregoing, Company shall, subject to the provisions of paragraph 14 of the Agreement, have the right to include the Single on any long playing record which constitutes the first long playing record recorded by Artist under the Agreement Said long playing record shall be recorded wholly in accordance with the provisions of the Agreement and shall consist of masters technically satisfactory to Company for the manufacture of long playing records, and shall be of a duration, unless Company otherwise directs, of not less than twenty-five minutes (25). Further, and not withstanding the provisions of paragraph 18(g) of the Agreement, Artist shall not have the right to release the Single; however, in the event that Company causes Artist to record a long playing record and incorporates thereon the Single, and Company fails to release such long playing record in the "release territories" as provided in paragraph 4 hereof, Artist shall be entitled to release such long playing record and/or the Single in accordance with the provisions of said paragraph 18(g).

2. Company has heretofore financed and produced a video-taped recording of the Artist incorporating thereon certain of the Artist's performances (hereinafter "videotape"). Pursuant to paragraph 16(b) of the Agreement, such videotape is deemed a "record and is subject, in all respects, to the provisions of the Agreement. Artist shall be entitled to commercially exploit the videotape on the following conditions:

(a)   the manner, mode and media of such commercial exploitation shall, in each instance, be subject to Company's approval, such approval not to be unreasonably withheld.

(b)   matters with reference to the commercial exploitation of the videotape shall be subject to the mutual approval of Company and Artist.

(c)   copyright in and to the videotape shall vest in Company and Artist in equal shares.  Company may take such steps of instituting such legal action or proceedings in its name or in Artist's name or in joint names of Artist and Company as Company may deem reasonably necessary to protect such copyright in and to the videotape.  The Artist hereby appoints Company as lawful attorney in fact to do all things permitted or contemplated pursuant to the terms hereof.  Net proceeds derived from the commercial exploitation of the videotape shall be divided between the parties hereto in equal shares and the Artist's share thereof shall be paid in accordance with the provisions of paragraph 10(a) of the Agreement.  The expression "net proceeds" shall mean all gross monies received by Company pursuant to the commercial exploitation of the videotape less all costs and expenses paid or incurred by Company directly in connection with the production, manufacture and commercial exploitation of the videotape.

3.   Notwithstanding the provisions of paragraph 18(c) of the Agreement, Company may request Artist to render her services and Artist agrees to so render her services, for the production of further videotapes embodying masters and such videotapes may, at Company's sole election, be treated as "long playing records" under the Agreement.*  The recording of any videotape and/or long playing record hereunder shall commence only after full consultation between Artist and Company and shall be subject to the provisions of paragraph 4 of the Agreement.

4.   Company agrees to release (in the United States, Canada, United Kingdom, Germany and Japan, hereinafter called "release territories") a long playing record featuring the Artist's recorded performances within six (6) months from the date of delivery of masters recorded in all respects in accordance with the Agreement, as hereby amended.  In the event that Company fails to release such long playing record in any of the release territori Artist shall have the right to terminate the Agreement in respect of such release territories where the long playing record is not so released upon giving notice in writing to the Company of her intention to so do.

*and shall be subject, in all respects to the provisions of Paragraph 2, hereinabove set forth.

-2-

5.    Artist hereby confirms that Company has timely
exercised its option pursuant to paragraph 14(a) of the Agreement
to extend the term hereof for a further period of six (6) months
(hereinafter "first option").   Notwithstanding the foregoing,
the first option shall be extended by a further period of
four (4) months commencing with the date of delivery to Company
by Artist of the long playing record presently being recorded by
Artist, which long playing record shall consist of recorded
performances of the Artist technically satisfactory and suitable
in all respects for commercial exploitation by Company.  Notwith-
standing the provisions of paragraph 14(b) of the Agreement, it is
hereby agreed that Company shall, at any time during the four (4)
month period referred to above, be entitled to exercise the first
of the two (2) further separate and successive options granted by
paragraph 14(b) of the Agreement; such options shall be exercised
by prior written notice as in said paragraph 14(b) provided.

6.    Provided Company shall exercise the options in
paragraph 14(b) of the Agreement, as amended, appearing, and in
consideration of Company paying to Artist, within fourteen (14)
days of the date hereof, the sum of Five Thousand ($5,000.00) Dolla:
which sum shall be paid by Company as a non-returnable bonus and
shall not be recouped by the Company from royalties payable to
Artist under the Agreement, Artist hereby grants to Company two (2)
further separate and successive options (hereinafter the "additiona:
options") to extend the term of the Agreement by two (2) further
separate and successive contract periods of one (1) year each.   The
additional options shall be exercised by Company upon the following
terms and conditions:

(a)   Company shall exercise the additional options
by giving to Artist, in each instance, not less than thirty (30)
days notice in writing prior to the expiration of the then current
contract period.   In addition, and at the time of giving such notice
Company shall pay to Artist, in respect of its exercise of each of
the additional options, the sum of Fifteen Thousand ($15,000.00)
Dollars as a non-returnable bonus, which bonus shall not be recoupe
by Company from royalties payable to Artist under the Agreement.

(b)   In each such additional option period as aforesaid
the Artist shall record a minimum of one (1) new long playing record
and a maximum of two (2) new long playing records as the Company
shall request.   The advance payable with respect to each such record
in the first additional option period shall be Eighty-Five Thousand
($85,000.00) Dollars and the advance payable with respect to each
such record in the second additional option period shall be One
Hundred Thousand ($100,000.00) Dollars; said advances shall be paid
by Company as non-returnable advances on account of royalties
payable by Company to Artist pursuant to the provisions of paragraph
8 of the Agreement and shall be paid as to one-half thereof on
commencement of recording and the balance on delivery of technically
satisfactory masters for each such record.   Notwithstanding the
foregoing, the advances (but not the bonuses) payable to the Artist
pursuant to the provisions of this subparagraph shall be conditional
upon Company achieving record sales throughout the world or not less

-3-

than Five Hundred Thousand (500,000) units (hereinafter "the minimum sales") of the long playing record recorded by the Artist immediately preceding the subject long playing record. In the event that record sales by Company as aforesaid fail to achieve the minimum sales, then the advance payable to Artist with respect to each record to be recorded by Artist in the additional option periods shall be reduced pro-rata down to a floor of Fifty Thousand ($50,000.00) Dollars for each long playing record in the first additional option period and down to a floor of Sixty-Five Thousand ($65,000.00) Dollars in respect of each long playing record in the second additional option period. Thus, in the first additional option period Artist shall receive an advance for each long playing record of not less than Fifty Thousand ($50,000.00) Dollars and in the second additional option period Artist shall receive an advance for each long playing record of not less than Sixty Five Thousand ($65,000.00) Dollars. To lend clarity to the foregoing, and by way of example only, if immediately prior to Artist recording the first long playing record in the first additional option period, the long playing record recorded by Artist in the immediately preceding contract period shall have achieved sales of Four Hundred Thousand (400,000) units the advance payable to Artist shall be reduced by one-fifth (1/5th) and shall be the sum of Seventy-Eight Thousand ($78,000.00) Dollars.

7.   Artist hereby acknowledges receipt of the sum of Seven Thousand Five Hundred ($7,500.00) Dollars paid by Company to Artist and being the non-returnable advance on account of royalties payable by Company upon delivery of technically satisfactory masters for the long playing record referred to in paragraph 14(a) of the Agreement.  Payment of this sum by Company shall not be construed as Company's acceptance of delivery of such masters in accordance with said paragraph 14(a).

8.   Paragraph 10(a) of the Agreement shall be amended and supplemented as follows:

(a)   Artist may, not more than once in each year of the Agreement, upon giving to Company not less than thirty (30) days notice in writing, require Company to make available for inspection those books, records and accounts of Company in respect of Company's licensing and distribution agreements relating to Artist.  Artist may, at her own cost and expense, and upon giving notice as aforesaid, appoint an independent Chartered Accountant who is not at that time engaged upon another inspection of Company's accounts for any other party, to inspect such books, records and accounts so far as such relate to Artist.  Such inspection shall be conducted at Company's offices as designated by Company, during normal business hours, and shall be concluded within a reasonable time of commencement.  All other matters relating to Artist's right to inspect Company's books, records and accounts shall be subject to the provisions of paragraph 10 of the Agreement.

(b)   Notwithstanding the provisions of paragraph 10 of the Agreement, with respect to records sold by Company's licensees and distributors in respect of which Company has not received payment then Company shall not be obliged to account to Artist as in said paragraph 10 of the Agreement appearing, until payment from such licensee and/or distributor has been received by Company.

-4-

Case 2:12-cv-05186-DDP-SH   Document 1   Filed 06/14/12   Page 48 of 57   Page ID #:50

9. Save as otherwise in this amending document appearing, the Agreement shall be deemed to be in full force and effect and may not be amended or otherwise varied save by an agreement in writing signed by the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the ___/5___ day of ___October___, 1980.

Signed for and on behalf of
RADIALCHOICE LIMITED

By: _____
Authorized Officer

Signed by TONI BASIL

_____
TONI BASIL

-5-



## AMENDING DOCUMENT

Reference is hereby made to that certain recording agreement (hereinafter "agreement") made August 31, 1979 by and between RADIALCHOICE LIMITED (in the agreement and hereinafter referred to as "company") and TONI BASIL (in the agreement and hereinafter referred to as "artist").

WHEREAS:

Company and artist agreed to amend certain provisions in the agreement and, pursuant to an Amending Agreement dated 1st October, 1980, such amendments were effectuated.

WHEREBY IT IS AGREED:

Notwithstanding anything to the contrary in paragraph 3 of the Amending Agreement of 1st October, 1980 appearing, in the event that company requests artist to render her services and artist agrees to so render her services, for the production or further videotapes embodying masters, such videotapes shall be subject, in all respects, to the provisions of paragraph 2 of the said Amending Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the 1st day of October, 1980.

Signed for and on behalf of
RADIALCHOICE LIMITED

By: _____
       Authorized Officer

Signed by
TONI BASIL

_____
       Toni Basil

Case 2:12-cv-05186-DDP-SH Document 1 Filed 06/14/12 Page 50 of 57 Page ID #:52

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the
Central District of California

ANTONIA BASILOTTA, p/k/a TONI BASIL an individual

|  |  |
|---|---|
| *Plaintiff* | ) ) ) |
| SIMON PETER LAIT, an individual;<br>(SEE ATTACHED CAPTION PAGE) | ) Civil Action No.    **CV 12 - 05186 DDP (SHx)** ) ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
F. Edie Mermelstein
LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BLVD., SUITE 900, HUNTINGTON BEACH, CA 92647
714-596-0137

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: June 14, 2012

*Denise* **DENISE VO**

*Signature of Clerk or Deputy Clerk*

**LAW OFFICES OF F. EDIE MERMELSTEIN**
F. Edie Mermelstein, State Bar No. 248941
17011 Beach Blvd., Suite 900
Huntington Beach, CA 92647
Telephone: (714) 596-0137 Fax: (714) 842-1979

Attorneys for Plaintiff ANTONIA
BASILOTTA p/k/a TONI BASIL, an
individual

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIA BASILOTTA, p/k/a TONI BASIL an individual,<br>　　　　　Plaintiff,<br><br>　　　vs.<br><br>Simon Peter Lait, an individual; Clive Solomon, an individual; Stillwater, Ltd., a United Kingdom company; Razor & Tie Direct L.L.C., a New York Limited Liability Company; Razor & Tie Entertainment, L.L.C., a New York Limited Liability Company; and Razor & Tie Music Corp., a New York Corporation and DOES 1-10,<br><br>　　　　　Defendants. | CASE NO.<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>(1) Fraud or Deceit; (2) Misappropriation of Likeness in Violation of California Civil Code §3344; (3) Misappropriation of Name and Likeness in Violation of Common Law; (4) Unjust Enrichment; (5) Involuntary Trust; (6) Rescission based on Fraud and/or Lack of Consideration; (7) Violation of Business & Professions Code § 17200, et seq; (8) Breach of Contract; (9) Accounting; and (10) Declaratory Relief. |

**COMPLAINT**

Plaintiff, ANTONIA CHRISTINA BASILOTTA (p/k/a "Toni Basil"), brings this complaint and alleges as follows:

LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BOULEVARD, SUITE 900
HUNTINGTON BEACH, CALIFORNIA 92647

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*

was received by me on *(date)*                                    .

☐ I personally served the summons on the individual at *(place)*

_____     on *(date)*                    ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)*                                , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)*                                                      , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____     on *(date)*                    ; or

☐ I returned the summons unexecuted because                                                      ; or

☐ Other *(specify):*


My fees are $                    for travel and $                    for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date:

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the
Central District of California

ANTONIA BASILOTTA, p/k/a TONI BASIL an individual

|  |  |  |
|---|---|---|
| *Plaintiff* | ) |  |
| v.<br>SIMON PETER LAIT, an individual;<br>(SEE ATTACHED CAPTION PAGE) | )<br>)<br>)<br>)<br>)<br>) | Civil Action No. |
| *Defendant* |  |  |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
F. Edie Mermelstein
LAW OFFICES OF F. EDIE MERMELSTEIN
17011 BEACH BLVD., SUITE 900, HUNTINGTON BEACH, CA 92647
714-596-0137

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: June 14, 2012

**DENISE V**

*Signature of Clerk or D*

1 | **LAW OFFICES OF F. EDIE MERMELSTEIN**
F. Edie Mermelstein, State Bar No. 248941
2 | 17011 Beach Blvd., Suite 900
Huntington Beach, CA 92647
3 | Telephone: (714) 596-0137 Fax: (714) 842-1979

4 | Attorneys for Plaintiff ANTONIA
BASILOTTA p/k/a TONI BASIL, an
5 | individual

6

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

| 10 | ANTONIA BASILOTTA, p/k/a TONI BASIL an individual,<br>Plaintiff, | CASE NO. |
|---|---|---|
| 11 | | **COMPLAINT** |
| 12 | vs. | JURY TRIAL DEMANDED |
| 13 | Simon Peter Lait, an individual; Clive Solomon, an individual; Stillwater, Ltd., a United Kingdom company; Razor & Tie Direct L.L.C., a New York Limited Liability Company; Razor & Tie Entertainment, L.L.C., a New York Limited Liability Company; and Razor & Tie Music Corp., a New York Corporation and DOES 1-ₜₒ, | (1) Fraud or Deceit; (2) Misappropriation of Likeness in Violation of California Civil Code §3344; (3) Misappropriation of Name and Likeness in Violation of Common Law; (4) Unjust Enrichment; (5) Involuntary Trust; (6) Rescission based on Fraud and/or Lack of Consideration; (7) Violation of Business & Professions Code § 17200, et seq; (8) Breach of Contract; (9) Accounting; and (10) Declaratory Relief. |
| 18 | Defendants. | |

19

20

21

22 | **COMPLAINT**

23 | Plaintiff, ANTONIA CHRISTINA BASILOTTA (p/k/a "Toni Basil"), brings this

24 | complaint and alleges as follows:

25

26

27

28

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*

was received by me on *(date)*                              .

    ❒ I personally served the summons on the individual at *(place)*

                         on *(date)*                    ; or

    ❒ I left the summons at the individual's residence or usual place of abode with *(name)*

                         , a person of suitable age and discretion who resides there,

    on *(date)*                    , and mailed a copy to the individual's last known address; or

    ❒ I served the summons on *(name of individual)*                                                  , who is

    designated by law to accept service of process on behalf of *(name of organization)*

                         on *(date)*                    ; or

    ❒ I returned the summons unexecuted because                                                  ; or

    ❒ Other *(specify):*


My fees are $                for travel and $                for services, for a total of $ ____0.00____

I declare under penalty of perjury that this information is true.

Date:

                                     *Server's signature*

                                     *Printed name and title*

                                     *Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself □) | DEFENDANTS |
|---|---|
| ANTONIA BASILOTTA p/k/a TONI BASIL | Simon Peter Lait; Clive Solomon; Stillwater, Ltd.; Razor & Tie Direct, LLC; Razor & Tie Entertainment, LLC; Razor & Tie Music Corporation. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) F. Edie Mermelstein, Law Offices of F. Edie Mermelstein, 17011 Beach Blvd., Ste 900, Huntington Beach, CA 92647 | Attorneys (If Known) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country ☐ 3 | | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No     ☐ **MONEY DEMANDED IN COMPLAINT:** $ 5,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1332(a)(1)     Fraudulent transfers of ownership and unauthorized use of the hit song, "Mickey" by Toni Basil

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☒ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/Exchange | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | **IMMIGRATION** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: **CV 12 - 05186 DDP (SHx)**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | United Kingdom; United Kingdom; United Kingdom; New York; New York; New York |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: **In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date June 14, 2012

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |